On Rehearing Granted

PER CURIAM.
This action comes before us on petition of The Florida Bar to amend The Florida Bar’s Code of Professional Responsibility. Our jurisdiction is conferred by article V, section 15 of the Florida Constitution. With modifications, we grant the Bar’s, petition for amendment.
Traditionally, advertising by members of the legal profession has been prohibited. The Canons of Professional Ethics were first adopted by the American Bar Association in 1908. In January, 1941, the Supreme Court of Florida adopted “rule B— Ethics Governing Attorneys” which included Canon 27, promulgated by the ABA, which stated that the most effective advertisement was the establishment of a well merited reputation for professional capacity, fidelity and trust. In December, 1955, the Supreme Court of Florida adopted article X of the Integration Rule of The Florida Bar which also incorporated the ABA’s Canon 27. In October of 1970, article X was amended to conform to the Code of Professional Responsibility. In Re The Integration Rule of The Florida Bar, 235 So.2d 723 (Fla.1970). Canon 2 of that code specifically prohibited advertising in the media, other than in reputable law lists. Subsequently, the code was amended to allow listings in *436 both the alphabetical and classified sections of telephone directories and to permit listings of designations under the Florida designation plan. In the Matter of The Florida Bar, 319 So.2d 1 (Fla.1975).
EVOLUTION OF THE LAW
We must consider amendment to the Code of Professional Responsibility because of an evolution that has taken place in the law regarding lawyer advertising. This evolution began in 1975 in Bigelow v. Virginia, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), where the United States Supreme Court held that paid commercial advertising is protected by the guarantees of the first amendment to the United States Constitution. In so holding, the Court said:
The policy of the First Amendment favors dissemination of information and opinion, and “[t]he guarantees of freedom of speech and press were not designed to prevent ‘the censorship of the press merely, but any action of the government by means of which it might prevent such free and general discussion of public matters as seems absolutely essential . . . . ’ 2 Cooley, Constitutional Limitations 886 (8th Ed.).”
Id. at 829, 95 S.Ct. at 2236.
Later, in Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), the Supreme Court held that even “commercial speech” is protected by the first and fourteenth amendments to the United States Constitution. The Court emphasized that: (1) the advertiser’s economic interest does not disqualify him from the guarantees of the Constitution; (2) individual consumers and the society as a whole have an interest in the free flow of commercial information; (3) a state’s interest in maintaining a high degree of professionalism among those it licenses cannot justify a state ban on advertising; and (4) a state may regulate, but not by keeping consumers in ignorance of the fee charges of competing professionals. In summarizing the reasons for its holding, the Court said:
The advertising ban does not directly affect professional standards one way or the other. It affects them only through the reactions it is assumed people will have to the free flow of drug price information. There is no claim that the advertising ban in any way prevents the cutting of corners by the pharmacist who is so inclined. That pharmacist is likely to cut corners in any event. The only effect the advertising ban has on him is to insulate him from price competition and to open the way for him to make a substantial, and perhaps even excessive, profit in addition to providing an inferior service. The more painstaking pharmacist is also protected but, again, it is a protection based in large part on public ignorance.
Id. at 769, 96 S.Ct. at 1829.
Next in this evolutionary process came the lawyer advertising case with which we are principally concerned and obliged to follow. In Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the Supreme Court held that truthful advertising of “routine legal services” is protected by the first and fourteenth amendments to the Constitution of the United States against blanket prohibition by a state. In this ruling, the Court reserved the question of “in-person” solicitation of clients in situations that could breed undue influence by attorneys or their agents. The Court made it clear that certain limitations on lawyer advertising are permissible. These limitations included the following:- (1) false, deceptive, or misleading advertisements are subject to restraint; (2) claims as to the quality of services may be so misleading as to warrant restriction; (3) a warning or disclaimer may be required to insure that consumers are not misled; and (4) reasonable restrictions on the time, place, and manner of advertising may be appropriate.
The Bates decision was limited to the printed media. The Court specifically declined to reach the issue of electronic broadcasting, stating that advertising in the broadcast media would warrant special consideration.
*437 Although not specifically bearing upon the issues before us today, two other cases are worthy of note. In ruling on In Re Primus, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978), the Supreme Court held that non-profit organizations that solicit prospective litigants for litigation as “a form of political expression” and “political association” are protected by the first amendment. As to these organizations, said the Court, government may regulate only “with narrow specificity.” Referring to its earlier holding in NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), the Court stated that collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the first amendment. On the same day that Primus was filed, the Court also filed Ohralik v. Ohio State Bar Association, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), holding that a lawyer may be disciplined for soliciting clients in person, for pecuniary gain, under circumstances likely to pose dangers that the state has a right to prevent. The Court went on to hold that a state may protect the public from solicitation that involves fraud, undue influence, intimidation, and overreaching.
THE ISSUES
The Florida Bar has filed its proposed amendments to the Code of Professional Responsibility and argues that these amendments are in conformity with the guidelines announced in Bates and sufficiently promote the dissemination of information concerning the availability of legal services so as to allow the public to make an informed selection. Individuals and organizations, which we have grouped and called respondents, attack the proposed amendments on the basis that they unreasonably restrict first amendment privileges, contrary to the holding in Bates.*
We must resolve the following issues: (1) Must electronic advertising be permitted? (2) If electronic advertising is to be permitted, how must its guidelines differ from the guidelines for the printed media? (3) What data is permissible in advertisements? (4) Should the Bar be allowed to define “routine legal services,” and if so, what services qualify under the definition? (5) To what extent should lawyers be permitted to advertise the areas or fields of law in which they practice or are qualified for practice under the designation plan? (6) Do the Bar’s recommendations of rules and guidelines regarding time, place, and manner of advertising infringe upon rights protected by the first and fourteenth amendments to the Constitution of the United States? The question of direct solicitation is not an issue in this case. As demonstrated by Primus and Ohralik, supra, the matter of direct lawyer solicitation involves different considerations from lawyer advertising, and regulation of that kind of activity stands on a different footing. See also Pace v. State, 368 So.2d 340 (Fla.1979).
THE NATIONAL PICTURE
The American Bar Association has written a model code which séeks to balance the lawyer’s right to advertise against the Bar’s responsibility to protect the public from fraud and deception. The ABA’s model code, Proposal B, sets forth a liberal view. It permits advertising, but lists the type of information which may be included in legal advertiséments. It allows media advertising beyond lists and telephone directories but generally forbids pictures, drawings or symbols. Neon sign and billboard advertising are considered improper. It provides that lawyers must adhere to any fee advertised, and permits lawyers to advertise over radio as long as the message is prerecorded and approved by the lawyer. Televised advertising would be prohibited until the agency having jurisdiction under state law determines that the use of such media would foster the goals of the new rules and *438 would facilitate the process of informed selection of lawyers. It also permits professional cards, office signs, or letterheads to contain any information that would be permitted for print media advertising, and allows an individual lawyer or law firm to use any name which is not misleading or deceptive.
In viewing this evolving area of the law, we must insure that the constitutional right of lawyers to advertise is fully protected. While advertising which apprises consumers of the availability of competent legal counsel is beneficial to the public, we must guard against deceptive, misleading, and offensive advertising. We believe that the legal profession and the public is best served by adopting, with modifications, the American Bar Association’s Plan B. By so doing, we will be able to monitor changes in case law, professional comment, and attitudes.
The former Disciplinary Rules 2-101 and 2-102, and Ethical Considerations 2-1 through 2-15, are hereby repealed and superseded in their entirety by the following: DR 2 — 101 Publicity and Advertising.
(A) A lawyer shall not, on behalf of himself, his partner, associate or any other lawyer affiliated with him or his firm, use or participate in the use of any form of public communication containing a false, fraudulent, misleading, or deceptive statement or claim.
(B) Without limitation a false, fraudulent, misleading, or deceptive statement or claim includes a statement or claim which:
(1) Contains a material misrepresentation of fact;
(2) Omits to state any material fact necessary to make the statement, in the light of all circumstances, not misleading;
(3) Is intended or is likely to create an unjustified expectation;
(4) States or implies that a lawyer is a certified or recognized specialist other than as permitted by DR 2-105;
(5) Is intended or is likely to convey the impression that the lawyer is in a position to influence improperly any court, tribunal, or other public body or official;
(6) Relates to legal fees other than:
(a) A statement of the fee for an initial consultation;
(b) A statement of the fixed or contingent fee charged for a specific legal service, the description of which would not be misunderstood or be deceptive;
(c) A statement of the range of fees for specifically described legal services, provided there is a reasonable disclosure of all relevant variables and considerations so that the statement would not be misunderstood or be deceptive;
(d) A statement of specified hourly rates, provided the statement makes clear that the total charge will vary according to the number of hours devoted to the matter;
(e) The availability of credit arrangements; and
(f) A statement of the fees charged by a qualified legal assistance organization in which he participates for specific legal services the description of which would not be misunderstood or be deceptive; or
(7) Contains a representation or implication that is likely to cause an ordinary prudent person to misunderstand or be deceived or fails to contain reasonable warnings or disclaimers necessary to make a representation or implication not deceptive.
(C)A lawyer shall not, on behalf of himself, his partner or associate, or any other lawyer affiliated with him or his firm, use or participate in the use of any form of public communication which:
(1) Is intended or is likely to result in a legal action or a legal position being asserted merely to harass or maliciously injure another;
(2) Contains statistical data or other information based on past performance or prediction of future success;
(3) Contains a testimonial about or endorsement of a lawyer;
(4) Contains a statement of opinion as to the quality of the services or contains a *439 representation or implication regarding the quality of legal services which is not susceptible of reasonable verification by the public;
(5) Appeals primarily to a layperson’s fear, greed, desire for revenge, or similar emotion; or
(6) Is intended or is likely to attract clients by use of showmanship, puffery, self-laudation or hucksterism, including the use of slogans, jingles or garish or sensational language or format.
(D) A lawyer shall not compensate or give anything of value to a representative of the press, radio, television, or other communication medium in anticipation of or in return for professional publicity in a news item. A paid advertisement must be identified as such unless it is apparent from the context that it is a paid advertisement. If the paid advertisement utilizes radio or television, it shall be prerecorded, approved for broadcast by the lawyer and a recording of the actual transmission in addition to a written transcript of the same shall be retained by the lawyer.
(E) A public communication does not include direct solicitation, in person or through an intermediary, written or oral; nor does it include the activity described in Ethical Consideration 2-ll(a).
DR 2-102 Professional Notices, Letterheads, Offices, and Law Lists.
(A) A lawyer or law firm shall not use or participate in the use of a professional card, professional announcement card, office sign, letterhead, telephone directory listing, law list, legal directory listing or a similar professional notice or device if it includes a statement or claim that is false, fraudulent, misleading, or deceptive within the meaning of DR 2-101(B) or that violates the regulations contained in DR 2-101(C).
(B) A lawyer shall not practice under a trade name or a name that is misleading as to the identity, responsibility or status of those practicing thereunder, or is otherwise false, fraudulent, misleading, or deceptive within the meaning of DR 2-101(B), or is contrary to law. However, the name of a professional corporation or professional association may contain “P.C.” or “P.A.” or similar symbols indicating the nature of the organization, and if otherwise lawful a firm may use as, or continue to include in, its name the name or names of one or more deceased or retired members of the firm or of a predecessor firm in a continuing line of succession. A lawyer who assumes a judicial, legislative, or public executive or administrative post or office shall not permit his name to remain in the name of a law firm or to be used in professional notices of or public communications by the firm during any significant period in which he is not actively and regularly practicing law as a member of the firm, and during such period other members of the firm shall not use his name in the firm name or in professional notices of or public communications by the firm.
(C) A lawyer shall not hold himself out as having a partnership with one or more other lawyers unless they are in fact partners.
(D) A partnership shall not be formed or continued between or among lawyers licensed in different jurisdictions unless all enumerations of the members and associates of the firm on its letterhead and in other permissible listings make clear the jurisdictional limitations on those members and associates of the firm not licensed to practice in all listed jurisdictions; however, the same firm name may be used in each jurisdiction.
(E) Nothing contained herein shall prohibit a lawyer from using or permitting the use of, in connection with his name, an earned degree or title derived therefrom indicating his training in the law.
The Code of Professional Responsibility is Revised to Provide:
CANON 2
A Lawyer Should Assist The Legal Profession In Fulfilling Its Duty To Make Legal Counsel Available
ETHICAL CONSIDERATIONS
EC 2-1. The need for members of the public for legal services is met only if they recognize their legal problems, appreciate *440 the importance of seeking assistance, and are able to obtain the services of acceptable legal counsel. Hence, important functions of the legal profession are to educate laymen to recognize their legal problems, to facilitate the process of intelligent selection of lawyers, and to assist in making legal services fully available.

Recognition of Legal Problems

EC 2-2. The legal profession should assist laymen to recognize legal problems because such problems may not be self-revealing and often are not timely noticed. Therefore, lawyers acting under proper auspices should encourage and participate in educational and public relations programs concerning our legal system with particular reference to legal problems that frequently arise. Such educational programs should be motivated by a desire to benefit the public rather than to obtain publicity or employment for particular lawyers. Examples of permissible activities include preparation of institutional advertisements and professional articles for lay publications and participation in seminars, lectures, and civic programs. But a lawyer who participates in. such activities should shun personal publicity-
EC 2-3. Whether a lawyer acts properly in volunteering advice to a layman to seek legal services depends upon the circumstances. The giving of advice that one should take legal action could well be in fulfillment of the duty of the legal profession to assist laymén in recognizing legal problems. The advice is proper only if motivated by a desire to protect one who does not recognize that he may have legal problems or who is ignorant of his legal rights or obligations. Hence, the advice is improper if motivated by a desire to obtain personal benefit, secure personal publicity, or cause litigation to be brought merely to harass or injure another. Obviously, a lawyer should not contact a nonclient, directly or indirectly, for the purpose of being retained to represent him for compensation.
EC 2-4. Since motivation is subjective and often difficult to judge, the motives of a lawyer who volunteers advice likely to produce legal controversy may well be suspect if he receives professional employment or other benefits as a result. A lawyer who volunteers advice that one should obtain the services of a lawyer generally should not himself accept employment, compensation, or other benefit in connection with that matter. However, it is not improper for a lawyer to volunteer such advice and render resulting legal services to close friends, relatives, former clients (in regard to matters germane to former employment), and regular clients.
EC 2-5. A lawyer who writes or speaks for the purpose of educating members of the public to recognize their legal problems should carefully refrain from giving or appearing to give a general solution applicable to all apparently similar individual problems, since slight changes in fact situations may require a material variance in the applicable advice; otherwise, the public may be misled and misadvised. Talks and writings by lawyers for laymen should caution them not to attempt to solve individual problems upon the basis of the information contained therein.
Selection of a Lawyer
EC 2-6. Formerly a potential client usually knew the reputation of local lawyers for competency and integrity and therefore could select a practitioner in whom he had confidence. This traditional selection process worked well because it was initiated by the client and the choice was an informed one.
EC 2-7. Changed conditions, however, have seriously restricted the effectiveness of the traditional selection process. Often the reputations of lawyers are not sufficiently known to enable laymen to make intelligent choices. The law has become increasingly complex and specialized. Few lawyers are willing and competent to deal with every kind of legal matter, and many laymen have difficulty in determining the competence of lawyers to render different types of legal services. The selection of legal counsel is particularly difficult for *441 transients, persons moving into new areas, persons of limited education or means, and others who have little or no contact with lawyers.
EC 2-8. Selection of a lawyer by a layman should be made on an informed basis. Advice and recommendation of third parties —relatives, friends, acquaintances, business associates, or other lawyers may be helpful. A lawyer should not compensate another person for recommending him, for influencing a prospective client to employ him, or to encourage future recommendations. Advertisements and public communications should be formulated to convey information that is necessary to make an appropriate selection. Information that may be helpful in some situations would include: (1) office information; (2) biographical information; (3) description of one or more fields of law in which the lawyer or law firm practices; and (4) fee information.

Lawyer Advertising

EC 2-9. Members of the legal profession, as citizens of a free and enlightened nation, are entitled to share fully in the benefits and privileges which that nation provides, including the opportunity to participate in commercial forms of expression. With these privileges come attendant responsibilities and duties. It is the lawyer’s solemn responsibility to preserve public confidence in his profession and to protect the public from abuses which were deemed to necessitate earlier ethical bans on legal advertising.
EC 2-10. A primary motivation for commercial publicity lies in the need to encourage the flow of information to the public regarding the availability of legal services. The public benefit derived from advertising depends upon the usefulness of the information provided. It is essential that legal advertising be designed to identify the lawyer and his services without deception and misrepresentation. All publicity should be directed with concern for its effect on the layman. The non-lawyer is best served if advertisements are written in plain, accurate, and concise language which will not confuse or mislead the uninformed layman. Appeals to the layman’s fears or emotions are improper. It is also improper to promise benefits or to assure prospective clients of specific results. Advertisements should not convey the impression that the ingenuity of the lawyer rather than the justice of the claim is determinative. It is improper to claim or imply an ability to influence a court, tribunal, or other public body or official. Statistical data or other information based on past performance and predictions of future success are improper. Advertisements should not suggest that given procedures will always result in desired solutions but should be drawn with the recognition that conclusions as to legal needs and ap-' propriate action depend upon the unique circumstances of each client’s case.
EC 2-11(a). The content and format of the legal advertisement should comport with the dignity of the profession and promote public confidence in our legal system. Advertisements which utilize slogans, gimmicks, or other garish techniques are improper. Advertising through the use of large electrical and neon signs, billboards, soundtrucks or other extravagant media is likewise improper.
EC 2-ll(b). Recognizing that the determination of a proper fee depends upon factors incident to the particular case, it is imperative that public statements regarding average or estimated fees be made with extreme caution. Because fee information frequently may be misleading to a layman, causing later misunderstanding, a lawyer should exercise great care to assure that advertisements with respect to fee charges are complete and accurate.
EC 2 — 12. The name under which a lawyer conducts his practice may be a factor in the selection process. The use of a trade name or an assumed name could mislead laymen concerning the identity, responsibility, and status of those practicing thereunder. Accordingly, a lawyer in private practice should practice only under his own name, the name of a lawyer employing him, a partnership name composed of the name of one or more of the lawyers practicing in *442 a partnership, or, if permitted by law, in the name of a professional legal corporation, which should be clearly designated as such. For many years some law firms have used a firm name retaining one or more names of deceased or retired partners, and such practice is not improper if the firm is a bona fide successor of a firm in which the deceased or retired person was a member, if the use of the name is authorized by law or by contract, and if the public is not misled thereby. However, the name of a partner who withdraws from a firm but continues to practice law should be omitted from the firm name in order to avoid misleading the public.
EC 2-13. A lawyer occupying a judicial, legislative, or public executive or administrative position who has the right to practice law concurrently may allow his name to remain in the name of the firm if he actively continues to practice law as a member thereof. Otherwise, his name should be removed from the firm name, and he should not be identified as a past or present member of the firm, and he should not hold himself out as being a practicing lawyer.
EC 2-14. In order to avoid the possibility of misleading persons with whom he deals, a lawyer should be scrupulous in the representation of his professional status. • He should not hold himself out as being a partner or associate of a law firm if he is not one in fact, and thus should not hold himself out as a partner or associate if he only shares offices with another lawyer.
EC 2-15. In some instances a lawyer confines his practice to a particular field of law. Except as permitted in DR 2-105, a lawyer should not be permitted to hold himself out as a specialist or as having special training or ability other than in the historically excepted fields of admiralty, trademark and patent law. A lawyer may, however, indicate in permitted advertising, if it is factual, the one or more particular areas or fields of law in which he practices. A lawyer who qualifies under DR 2-105 may advertise that fact using the designations and definitions authorized under that provision. A lawyer who is not qualified under DR 2 — 105 and advertises particular areas or fields of law must be careful not to confuse laymen about his status and should avoid any implication that he is in fact qualified under DR 2-105.
EC 2-15(a). The legal profession has developed lawyer referral systems designed to aid individuals who are able to pay fees but need assistance in locating lawyers competent to handle their particular problems. Use of a lawyer referral system enables a layman to avoid an uninformed selection of a lawyer because such a system makes possible the employment of competent lawyers who have indicated an interest in the subject matter involved.. Lawyers should support the principle of lawyer referral systems and should encourage the evolution of other ethical plans which aid in the selection of qualified counsel.
ENGLAND, C. J., and ADKINS, BOYD and OVERTON, JJ., concur.
SUNDBERG, J., concurs in part and dissents in part with an opinion, with which ALDERMAN, J., concurs.

 Among those persons whom we have designated as respondents are: Chonin & Segor, P.A., Miami, Florida; The Legal Clinics of Pope-Hen-ninger, St. Petersburg, Florida; Florida Association of Broadcasters, Tallahassee, Florida; General Telephone Directory Company, Tampa, Florida; and the Department of Justice, Washington, D. C.