609 S.W.2d 411 (1980)
In the Matter of R. M. J., Respondent.
No. 61894.
Supreme Court of Missouri, En Banc.
December 15, 1980.
Rehearing Denied January 5, 1981.
John W. Inglish, California, for informant.
Charles B. Blackmar, St. Louis, for respondent.
Lewis C. Green and Richard D. Lageson, St. Louis, amicus curiae.
DONNELLY, Judge.
This is a disbarment proceeding wherein respondent questions the constitutionality of DR 2-101 of Rule 4 of this Court.
On June 25, 1974, this Court entered an Order appointing a Select Committee on Professional Ethics and Responsibility and charged it with the duty of reviewing Rule 4 of this Court and making such recommendations for revisions as deemed appropriate. The members of the Committee were: Robert L. Hawkins, Jr., Cole County, Chairman; James Ruddy, St. Louis County; David E. Blanton, Scott County; Meredith B. Turner, Greene County; Forrest M. Hemker, St. Louis City; R. Leroy Miller, Grundy County; Bertram W. Tremayne, Jr., St. Louis County; Martin J. Purcell, Jackson County; Donald L. Mason, Jackson County; and J. Andy Zenge, Jr., Lewis County.
One June 27, 1977, in Bates and O'Steen v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the Supreme Court of the United States posited a confrontation between the traditional concern for attorney professionalism and the public need to know of the availability, nature and price of legal services and came down on the consumer side under the aegis of protecting attorneys' rights to free flow of commercial speech.
On September 9, 1977, the Hawkins Committee submitted a report to this Court which sought to implement the teachings of Bates and O'Steen, supra. On October 24, 1977, this Court promulgated DR 2-101, a copy of which is appended to this opinion. The effective date of DR 2-101 was January 1, 1978. It can truthfully be stated that a constitutional study in depth was made *412 before DR 2-101 was adopted. On October 24, 1977, there was every reason to believe that the good-faith efforts made by the Committee and this Court to follow Bates and O'Steen, supra, would pass constitutional muster.
However, on June 20, 1980, in Central Hudson Gas & Electric Corporation v. Public Service Commission of New York, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), a case in which commercial speech was at issue, the Supreme Court of the United States constructed a model:
"Writing for the majority, Justice Lewis F. Powell Jr. delineated a four-part analysis to determine the constitutionality of government clamps on commercial speech. To come within the ambit of the First Amendment, Justice Powell explained, commercial speech must concern lawful activity and not be misleading. Once this demonstration is made, commercial speech may be restrained only if the government proves both that the restraints directly advance a substantial government interest and are not more extensive than necessary to serve that interest."
Fein, Free Speech in Ads Wins Key Plug From Brethren, The National Law Journal, Nov. 17, 1980, at 15, col. 1.
We are urged now by respondent to follow the Central Hudson model. We respectfully decline to enter the thicket of attempting to anticipate and to satisfy the subjective ad hoc judgments of a majority of the justices of the United States Supreme Court. See Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (the compelling state interest test); and Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (the imposition of the death penalty).
We recognize respondent's right to press on in the courts authorized by Article III of the United States Constitution. If he exercises that right and obtains a favorable result there, we can then decide whether we will honor our duty to exercise "superintending control over all courts" in Missouri (Mo.Const. art. V, § 4) or will order DR 2-101 excised from Rule 4 of this Court.
We are aware, of course, that this is a "test" case and that respondent's violation of Missouri's Code of Professional Responsibility is minimal.
Respondent is ordered to pay the costs herein and is privately reprimanded. In re Sullivan, 494 S.W.2d 329, 334 (Mo. banc 1973).
RENDLEN, WELLIVER, MORGAN and HIGGINS, JJ., concur.
BARDGETT, C. J., and SEILER, J., dissent in separate dissenting opinions filed.

APPENDIX
DR 2-101. PUBLICITY
(A) A lawyer shall not, on behalf of himself, his partner, associate or any other lawyer affiliated with him or his firm, use or participate in the use of any form of public communication respecting the quality of legal services or containing a false, fraudulent, misleading, deceptive, self-laudatory or unfair statement or claim.
(B) In order to facilitate the process of informed selection of a lawyer by potential consumers of legal services, a lawyer may publish, subject to DR 2-103, the following information in newspapers, periodicals and the yellow pages of telephone directories distributed in the geographic area or areas in which the lawyer resides or maintains offices or in which a substantial part of the lawyer's clientele resides, provided that the information disclosed by the lawyer in such publication complies with DR 2-101(A), and is presented in a dignified manner:
(1) Name, including name of law firm and names of professional associates; addresses and telephone numbers;
(2) One or more particular areas or fields of law in which the lawyer or law firm practices if authorized by and using designations and definitions authorized for that purpose by The Advisory Committee;

*413 (3) Date and place of birth;
(4) Schools attended, with dates of graduation and degrees;
(5) Foreign language ability;
(6) Office hours;
(7) Fee for an initial 30-minute consultation;
(8) Availability upon request of a schedule of fees;
(9) Credit arrangements for payment of fees will be given consideration;
(10) The fixed fee to be charged for the following specific routine legal services:
1. An uncontested dissolution of marriage;
2. An uncontested adoption;
3. An uncontested personal bankruptcy;
4. An uncomplicated change of name;
5. A simple warranty or quitclaim deed;
6. A simple deed of trust;
7. A simple promissory note;
8. An individual Missouri or federal income tax return;
9. A simple power of attorney;
10. A simple will;
11. Such other services as may be approved by The Advisory Committee; the description of which would not be misunderstood or be deceptive, provided that the statement discloses that the quoted fee will be available only to clients whose matters fall into the services described and that the client is entitled without obligation to a specific estimate of the fee likely to be charged in print size at least equivalent to the largest print used in setting forth the fee information.
(C) If a lawyer advertises a fee for a service, the lawyer must render that service for no more than the fee advertised.
(D) Unless otherwise specified in the advertisement if a lawyer publishes any fee information authorized under DR 2-101(B) in a publication that is published more frequently than one time per month, the lawyer shall be bound by any representation made therein for a period of not less than 30 days after such publication. If a lawyer publishes any fee information authorized under DR 2-101(B) in a publication that is published once a month or less frequently, he shall be bound by any representation made therein until the publication of the succeeding issue. If a lawyer publishes any fee information authorized under DR 2-101(B) in a publication which has no fixed date for publication of a succeeding issue, the lawyer shall be bound by any representation made therein for a reasonable period of time after publication but in no event less than one year.
(E) This rule does not prohibit limited and dignified identification of a lawyer as a lawyer as well as by name:
(1) In political advertisements when his professional status is germane to the political campaign or to a political issue.
(2) In public notices when the name and profession of a lawyer are required or authorized by law or are reasonably pertinent for a purpose other than the attraction of potential clients.
(3) In routine reports and announcements of a bona fide business, civic, professional, or political organization in which he serves as a director or officer.
(4) In and on legal documents prepared by him.
(5) In and on legal textbooks, treatises, and other legal publications, and in dignified advertisements thereof.
(F) A lawyer shall not compensate or give anything of value to representatives of the press, radio, television, or other communication medium in anticipation of or in return for professional publicity in a news item.
*414 BARDGETT, Chief Justice, dissenting.
I respectfully dissent and would dismiss the information. The work in 1977 of the committee referred to in the principal opinion was and is much appreciated. The question of what may be done in the regulation of lawyer advertising without offending the First Amendment of the United States Constitution or its counterpart in the Missouri Constitution is still unclear. Of course, unrestrained lawyer advertising can be a trap to snare the unwary. Yet, the public has an interest in knowing whether a lawyer practices in a particular field, what courts he practices in, and the cost of services. And the lawyer has a first-amendment right to so inform the public. It seems to me that is essentially what Bates and O'Steen v. Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), holds, and it was the holding in that case that we sought to satisfy in our modification of DR 2-101 of Rule 4, including the authorization to the committee to draw up the addendum referred to in Judge Seiler's dissent. That addendum was a sort of "menu" which required the use of certain words, e. g., "tort law", to describe certain fields of practice. The committee and the Court were trying to be helpful by assuring the lawyer that if he used those descriptions his advertisement would be permissible. But, if advertising a practice in a given field of law is permissible then can we say that the state has a significant interest in requiring the use of the words "tort law" but not the words "personal injury"? In my opinion, we cannot support such a conclusion with reason. It was, perhaps, a mistake to seemingly require strict adherence to the boiler plate language of the addendum, but it can be used as a guide. I cannot, therefore, join in an opinion which would continue to maintain the addendum as the sole and only words permitted to describe a field of practice in an advertisement. The same is true of the term "contracts" used in respondent's advertisement. The word "contract" is in common usage and means something to nonlawyers. I can find no synonyms for it in the addendum; yet, in general parlance, "contract" or "contract law" describes an area of practice in an understandable way to nonlawyers.
In approving DR 2-101 and the addendum, we were, in a sense, construing the First Amendment as articulated in Bates and O'Steen, supra. The adoption of a rule does not involve the adjudication of a case or controversy, and consequently we did not have the full benefit of adversarial briefs and argument as we do in cases here for adjudication and as we now have in this case. We should recognize that in those circumstances we can more readily err and be too restrictive. In my opinion, that is what happened here and this is our opportunity to correct the error. I would hold that respondent was not guilty of unethical conduct in using the terminology of "Personal Injury", "Workmen's Compensation", and "Contracts". I would further hold the addendum shall be considered as a guide and that no unethical conduct is committed if the terminology used to describe a field of practice is reasonable and fairly describes to a nonlawyer the field of law spoken of in the advertisement.
I find no unethical conduct involved in respondent stating he is admitted to practice in Missouri and Illinois and the United States Supreme Court as it seems to me the reader benefits from knowing the courts in which he is admitted to practice and there is no identifiable state interest served in prohibiting an attorney from so informing the public. I disagree with Judge Seiler's subjective view of the ad regarding respondent's right to practice in the United States Supreme Court. I would hold a lawyer may state the states or courts to which he has been admitted to practice. Nor do I think the mailing of essentially the same material constitute unethical conduct.
I do not, however, regard Central Hudson Gas & Electric Corporation v. Public Service Commission of New York, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), as applicable, in its entirety, to advertising by lawyers. I believe we should continue to exercise responsibility to the public in regulating the practice of law and this includes advertising. But I also believe we must do *415 so reasonably and be willing to recognize errors we may make in rules and correct them whenever the opportunity to do so presents itself.
For these reasons I would dismiss the information.
SEILER, Judge, dissenting.
I respectfully dissent. I would dismiss the information. In explaining why, it is first necessary to set out certain facts. The Advisory Committee's information of November 19, 1979 contains four counts. Count I alleges that respondent placed an advertisement in the January/February 1978 issue of a neighborhood newspaper which advertisement did not comply with DR 2-101(B), in that it listed the courts [sic] in which respondent was admitted to practice, listed areas of law the advertising of which had not been approved, and did not contain a statement disclaiming certification of expertise in said areas. Count II contains the same allegations except that the advertisement was placed in the February 1978 St. Louis Suburban West telephone directory Yellow Pages. Count III alleges that respondent allowed professional announcement cards, announcing the opening of respondent's office, to be sent to persons other than lawyers, clients, former clients, personal friends and relatives, contrary to DR 2-102(A)(2). Count IV contains the same allegations as Count I and II except that the advertisement was placed in the August 1978 St. Louis Yellow Pages and did contain a disclaimer.
The specific items in respondent's ads which are at issue are that he listed that he was admitted to practice before the United States Supreme Court and that he listed fields of law by using titles differing from the specific titles approved by the Advisory Committee, as, for example, "Personal Injury" instead of the approved title "Tort Law", "Workmen's Compensation" instead of the approved title "Workers Compensation Law" and "Contracts" where no such area of law is approved for advertising.
A list of the approved areas of law and terminology therefor is not found in DR 2-101. It appears in the Advisory Committee's addendum to DR 2-101(B)(2), published only in the January-February 1978 Journal of the Missouri Bar at page 51. The addendum lists twenty-three areas of law which can be used in advertisements and adds that "No deviation from the above phraseology will be permitted . . . ." It specifies that the following disclaimer be included in the advertisement: "Listing of the above areas of practice does not indicate any certification of expertise therein."
First, with regard to respondent's failure to include such a disclaimer as alleged in Counts I and II, the addendum which required it was adopted by the Advisory Committee on November 18, 1977. Respondent was sent a copy by the Advisory Committee on December 19, 1977. This was the first time that respondent could have been aware of the addendum, because it was not published until the January-February 1978 issue of the Journal of the Missouri Bar.[1] When respondent received the copy of the addendum, he telephoned the publishers with whom he had placed the advertisements for the purpose of modifying them to comply with the addendum, but in each case was told that no change could be made in that the publication process had gone too far. Respondent's later advertisement contained the disclaimer and I would therefore *416 dismiss those parts of Counts I and II that relate to the disclaimer.
Second, with regard to respondent's listing that he is admitted to practice before the United States Supreme Court, I have my doubts as to its propriety and I am skeptical as to the reasons for its inclusion. Respondent made no mention of any other court in his advertisements. The United States Supreme Court is the highest and best known court in the land. It also is the court least likely to be involved in the law business of the average client. Although the fact of being admitted to the Supreme Court might impress a person looking for a lawyer, the question arises: does such information really help the consumer in obtaining needed legal services or is it more a device to seize his attention and to convey the idea that one who is admitted to the United States Supreme Court is per se a better lawyer? Suppose a lawyer made such information the centerpiece of his advertisement, displaying it even more prominently than respondent has in the advertisements before us? I doubt that informational value gained by the consumer by advertising the isolated fact of admission to the United States Supreme Court justifies the risk of the false impression that such advertising may convey. I do not think that such a listing should be permitted, but I do not believe respondent's actions warrant discipline in this particular case in which the lawyer is trying to obtain a ruling on what he can and cannot do.
Third, with regard to the other charges, I do not believe we can constitutionally prohibit lawyers from listing areas of law using the term "Personal Injury" instead of the approved terminology "Tort Law" or the like as to other titles or from listing areas of law not covered in the addendum such as "Contracts." There is no need to be so restrictive. It is self-evident that "Personal Injury" is much more understandable to a layman than "Tort Law" and that listing "Contracts" might be helpful information to a prospective consumer. The same can be said as to other examples. Nor do I believe we can constitutionally prohibit lawyers from using first class mail to send out the same information that they could put in a newspaper advertisement. See In the Matter of Alfred S. Koffler, ___ N.Y.2d ___, 412 N.Y.S.2d 872, 412 N.E.2d 927 (N.Y.Ct.App., 1980).
Although Bates and O'Steen v. Arizona, 433 U.S. 350, 383, 97 S.Ct. 2691, 2708, 53 L.Ed.2d 810 (1977) does not specifically speak to the above situations, the United States Supreme Court did find that limiting commercial speech which 1) is false, deceptive, or misleading; 2) makes claims as to the quality of service; 3) involves in person solicitation; or 4) concerns illegal activities, was "clearly permissible." None of the above factors is present with regard to listing areas of law or sending announcement cards to strangers through the first class mail.
More recently, in Central Hudson Gas & Electric Corporation v. Public Service Commission of New York, 447 U.S. 557, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980), the Court stated:
"In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest."
The above cases cast serious doubt on the constitutionality of the restrictions sought to be enforced against respondent, and, in my judgment, there is even more doubt under the free speech clause of the Missouri Constitution, art. I, § 8, which, as I have submitted on other occasions, is broader and gives greater freedom of speech to the individual than its federal counterpart.
As stated earlier, I would dismiss the information.
NOTES
[1] In our order of October 24, 1977, which amended the disciplinary rules as to advertising, effective January 1, 1978, we authorized the Advisory Committee to establish designations and definitions of particular areas or fields of law as to which a lawyer could advertise. Those attorneys who did not look at or receive the January-February 1978 issue of the Journal of the Missouri Bar may not be aware of the existence of the addendum since it does not appear anywhere else, either in the Supreme Court Rules or in any statutory compilation. We have looked at the 1980 Yellow Pages in the telephone directories for both Kansas City and St. Louis and observe that numerous advertisements seem to be in violation of the addendum. This indicates to me that many lawyers are not aware of the addendum, as I do not believe that so many lawyers would knowingly want to publish advertisements which are out of compliance therewith.