OVERTON, Justice.
The Florida Bar Board of Governors has petitioned this Court to approve a plan which will allow members of The Florida Bar to become “certified” as having special competence in the areas of taxation and civil trial advocacy. In September, 1979, we rejected the bar’s initial plan but approved lawyer certification in concept. We also suggested that the bar submit a pilot program and requested a recommendation of how certification could operate with the Florida Designation Plan approved by this Court on October 3, 1975. See In re The Florida Bar, 319 So.2d 1 (Fla.1975). We granted rehearing to allow submission of a new permanent certification plan.
We approve in substance the certification plan as submitted but have modified the grandfather provision. We find, however, that the plan’s administrative structure and procedure are cumbersome and not properly interrelated with advertising and designation. The certification plan must harmonize with and complement the advertising of legal services and our previously approved designation plan. We consequently remand to The Florida Bar for redrafting and resubmission to the Court.
As the Florida legal profession embarks fully into specialization, we emphasize its two-fold purpose. First, specialization establishes goals and provides incentive for continuing legal education which should improve the competency of the bar; second, it identifies for people both within and without the profession those lawyers who have demonstrated special knowledge, skills, and proficiency in a specific field. We firmly believe that The Florida Bar and this Court must responsibly move forward to assist the public in determining those individuals who are qualified specialists and not leave that role to telephone directory editors, voluntary professional groups, or to entrepreneurs with high-sounding specialty certificates and advertising techniques.
As to the first purpose, we recognize that neither the proposed plan for certification nor our present designation plan is a panacea for all the problems of incompetence in the practice of law. It must be understood that flagrant incompetence is more fundamental, and, in fact, results from a lack of professional integrity. Marvin E. Frankel, in an article entitled Curing Lawyers' Incompetence: Premium Non Nocere, 10 Creighton L.Rev. 613 (1977), stated: “The significant qualities distinguishing good from bad lawyers — and, thus, the areas for truly major concern about ‘competence’— are matters of character, judgment, wisdom, morals, and attitude, not the business of technical proficiency.” Technical proficiency does not protect the public from a lazy, ill-prepared, or dilatory lawyer. Technical proficiency without professional integrity still adds up to a bad lawyer, and neither the existing designation plan nor the proposed certification plan is going to ensure that professional quality. However, they are a step in the right direction. They should encourage lawyers to improve and maintain their competence in particular fields and provide a reasonably balanced method for the public to identify special competence.
We have concluded that a lawyer who has special training or has in some measurable way demonstrated special competence in a particular field of law should be able to properly advertise that fact to the public. See The Florida Bar re Amendment to the Florida Bar Code of Professional Responsibility (Advertising), 380 So.2d 435 (Fla.1980). The existing designation plan and new certification plan are directly related to lawyer advertising. The constitutional authority for lawyers to advertise was established in Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), and Ohralik v. Ohio State Bar Association, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), but those decisions allowed this state through this Court to reasonably regulate the advertising of the *1387 quality of legal services to avoid deceptive or misleading claims. In Bates, the United States Supreme Court said a legal clinic could advertise the prices it would charge for routine legal services. In Ohralik, the Supreme Court held that the state may discipline a lawyer for soliciting clients for pecuniary gain under circumstances likely to pose dangers to the public. The Court concluded that the state may protect the public from solicitation that involves fraud, undue influence, intimidation, or overreaching.
This Court amended the lawyer code of professional responsibility of this state to comply with Bates and Ohralik. In so doing, we construed the holding in Bates and reiterated that “certain limitations on lawyer advertising are permissible. These limitations included the following: (1) false, deceptive, or misleading advertisements are subject to restraints; (2) claims as to the quality of services may be so misleading as to warrant restriction; (3) a warning or disclaimer may be required to ensure that consumers are not misled and (4) reasonable restrictions on the time, place, and manner of advertising may be appropriate.” Advertising at 436.
Designation and certification both address the quality of legal services for the benefit of those persons who must obtain those services. With lawyer advertising, the existing designation plan, and the adoption of certification, there will be three methods of communication available to aid the public in selecting a lawyer of their choice to perform necessary services. The methods and their operational significance may be summarized as follows:
Advertising. Any lawyer may advertise his name, address, telephone number, the kind of legal services he performs, and state the routine cost of these services. An attorney may not mislead or deceive the public and, in particular, may not advertise any self-serving special qualifications or quality of service.
Designation. After three years of practice, a lawyer may designate up to three areas of specialty practice and thereby commit himself to a mandatory continuing legal education program for each designated area to assure maintenance of competency. Compliance with the continuing legal education requirements is mandatory, periodically reviewed, and must be adhered to for retention of specialty designation. In accordance with the plan, a lawyer may publish and advertise that he is “Qualified in (permitted area) under the Florida Designation Plan.”
Certification. After five years of practice, a lawyer may apply for certification in certain specialty areas, limited as presently proposed to civil trial advocacy and taxation. Certification in these areas is obtained only upon a demonstration of specialized knowledge through (a) examination or graduate academic work, (b) experience in the specialty area, and (c) peer review. After initial certification, periodic review is required. Under the plan, a lawyer may publish that he is a “Board Certified (area of specialty) lawyer.”
These three categories allow the practicing lawyer the flexibility to advise the public of his desired practice areas and of any special professional qualifications in certain areas that he may have.
In considering the certification plan submitted, we find the administrative structure cumbersome and not sufficiently interrelated with advertising and designation. Advertising, designation, and certification affect each other. Consequently we find that there should be only one central administrative governing board, with the Florida Bar Board of Governors setting policy. The rules governing advertising, designation, and certification should be redrafted to reflect the following three limitations. First, the Supreme Court will retain ultimate responsibility. This will include any policy change in advertising or designation, and the addition of any new certification area and standards. Second, the policy-making and review function for advertising, designation, and certification should be vested in the board of governors. Third, the operational and administrative responsibility for advertising, designation, and cer *1388 tification should be vested in a single board with subcommittees for each certification area. With these changes, we contemplate no substantive change in advertising and signation as they now exist.
With reference to the certification proposals, we approve the substance of the provisions as hereinafter modified:
(1) For certification, a lawyer must have practiced law on a full-time basis for at least five years, show substantial involvement in the certification area during three of the last five years, show satisfactory continuing legal education, and pass the appropriate certification examination.
(2) A lawyer who otherwise meets the plan’s requirements may substitute for the examination the award of an LLM degree in the certification area from an ABA-approved law school if the applicant received his degree within eight years of application.
(3) Although not contained in the proposed plan, the bar may consider lawyer certification by other jurisdictions and professional legal organizations as partial equivalent credit in the same area under the Florida plan.
(4) We reject a general grandfather authorization but will consider appropriate grandfather provisions individually as they are submitted for each certification area. Grandfather provisions should have a very limited use. We note the plan for taxation includes a grandfather provision while the plan for the civil trial practice does not. We have determined appropriate the taxation grandfather provision for those lawyers who have practiced law on a full-time basis for at least twenty years prior to the date of this opinion and who have had substantial involvement in taxation.
(5) Some grandfathering must be allowed in order to provide for initial certification committee membership. We approve the proposed grandfathering in both the taxation and civil trial areas for this limited purpose.
(6) The suggested notice provision through which the Bar can inform the public of certification significance is, in our view, appropriate; the same type of provision should be used with designation.
(7)The specific standards submitted for taxation and civil trial advocacy are substantially different in their structure- as well as their respective requirements. We approve the requirements of both standards, as modified, but believe that all certification standards should, to the extent possible, be similarly structured. Consequently, both proposed standards should be restructured along similar lines.
We have initially approved certification in taxation because taxation is presently, without question, a de facto specialty with structured educational programs available within the academic community. An individual desiring to specialize in taxation may, for example, obtain a master of laws degree in that specialty.
We have also approved certification in civil trial advocacy because much has been spoken and written about the need to properly train and identify trial advocates. In fact, the federal judiciary is now implementing pilot trial advocacy standards for admission to practice in the federal judicial system. We agree that identifying lawyers with special qualifications for trial advocacy should provide useful knowledge to the public and should be beneficial to the courts as well.
Although we have approved the basic concept for structured lawyer specialization, we recognize the strong and continuing need for the general practitioner. The generalist is absolutely essential to our judicial system. A statement by Simon Rifkind concerning specialized courts illustrates this factor:
A body of law, secluded from the rest, develops a jargon of its kind, thought patterns that are unique, internal policies which it subserves and which are different from and sometimes at odds with the policies pursued by the general law ... you have set aside a body of wisdom that is the exclusive possession of a very small group of men who take their purposes for granted. Very soon their internal language becomes so highly stylized as to be *1389 unintelligible to the uninitiated. That in turn intensifies the seclusiveness of that branch of the law and that further immunizes it against the refreshment of new ideas, suggestions, adjustments, and compromises which constitute the very tissue of any living system of law.[1]
As this quote implies, legal specialists deal regularly with only limited issues and develop a somewhat narrow vision of legal problems. Being conscious of this, we must take care to assure that the problem does not adversely affect client representation. Even with specialization, the general practitioner will continue to be the mainstay of the legal profession and to conduct the largest segment of legal practice.
One further matter should be mentioned. With adoption of a certification plan, there will be a related need for more indepth educational programs in approved specialization areas than are presently available to the practicing bar. The legal profession and law schools should determine the existing demand and attempt to make available graduate degree programs which do not require a nine-month absence from active practice. For example, LLM programs could be structured so that a lawyer could obtain a degree by attending two or three summer sessions.[2] A limited graduate certificate program is perhaps another alternative.[3]
This Court recognizes its responsibility to ensure that Florida’s legal system is responsive to public needs and that the lawyers of this state have available to them a method for improving their proficiency. We believe that the public is entitled to know which lawyers have demonstrated special skills and possess technical competency in specific legal areas, and we have concluded that the framework of the proposals submitted by The Florida Bar is the proper means to accomplish this objective. We find, however, that the procedure and structure to implement the substance of the proposals can be improved. We therefore remand the proposals to the bar for redrafting and resubmission to the Court. We commend The Florida Bar for its extensive and dedicated efforts in the development of the proposed certification plan. It is, in our view, a step forward in improving the system of justice in this state.
The Florida Bar’s motion for rehearing is granted and our opinion of September 6, 1979, vacated.
It is so ordered.
SUNDBERG, C. J., and ADKINS, BOYD, ENGLAND and McDONALD, JJ., concur.
ALDERMAN, J., concurs specially with an opinion, with which BOYD, J., concurs.

. Rifkind, A Special Court for Patent Litigation? The Danger of a Specialized Judiciary, 37 A.B.A.J. 425, 426 (1951).

. The University of Virginia School of Law presently offers a summer Master of Laws program in Judicial Process for state and federal judges. See Kett, Unusual Experiment in Legal Education, [1980] Virginia Law School Annual Report 41.

.See Chaplin, The Structure of Legal Specialization in the 1980s, in National Conference on Enhancing Competence of Lawyers (conference papers) (1981).