407 So.2d 595 (1981)
THE FLORIDA BAR, Complainant,
v.
Barry D. SCHREIBER, Respondent.
No. 59946.
Supreme Court of Florida.
October 22, 1981.
Rehearing Denied January 11, 1982.
John F. Harkness, Jr., Executive Director, and Stanley A. Spring, Staff Counsel, Tallahassee, Paul A. Gross, Bar Counsel, and Harry K. Bender, Chairman, Grievance Committee 11 E, Miami, for complainant.
*596 Burton Young and Glen Rafkin of Young, Stern & Tannenbaum, North Miami Beach, for respondent.
SUNDBERG, Chief Justice.
In this disciplinary proceeding The Florida Bar seeks review of the referee's order granting respondent Shreiber's motion to dismiss which asserted that an attorney's direct mail solicitation of a potential client is constitutionally protected commercial speech. Having found that no United States Supreme Court decision protects the attorney's actions under the circumstances here involved and that other states are equally divided as to protecting such conduct, we decide that the state's interests in regulating the professional conduct of attorneys is paramount to the attorney's right to solicit by mail.
On June 30, 1979, Schreiber mailed a letter to Miami International Forwarders, an international trade company, in which he recommended his employment for immigration and naturalization matters.[1] As a result, The Florida Bar charged Schreiber with violations of Disciplinary Rules 2-103(A) and 1-102(A)(6) of The Florida Code of Professional Responsibility,[2] on the ground that the letter was a prohibited solicitation of legal business.[3] Schreiber sought and was granted dismissal by the judicial referee who found that respondent's actions were not in-person solicitation and could not be prohibited because they were protected under freedom of speech guaranteed by the federal and state constitutions.

I.
We begin with the settled proposition that even commercial speech is a constitutionally protected form of communication. Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). But equally well recognized is that commercial speech does not receive the same staunch first amendment protection as non-commercial speech, and that commercial speech occupies a "subordinate position in the scale of First Amendment values." Ohralik v. Ohio State Bar Association, 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978). The protection afforded commercial speech turns on the nature of the expression and its informational function. Central Hudson Gas & Electric *597 Corp. v. Public Service Commission, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Whenever the expression is connected with ancillary first amendment notions such as political, ideological expressions or associational rights, the first amendment cloak is heavier, and the countervailing state interest must be of increased importance and the corresponding regulation must be drawn with exactitude. See In re Primus, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978). The second value of commercial speech lies in its informational value to society. This concern focuses on the societal benefits to be derived from a communication. The greater the social utility and interest in the communication, the lesser the state's ability to regulate it. See Bigelow v. Virginia, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).
Solicitation involving legal services has been supported only in Supreme Court cases in which either political or associational rights were implicated, and the pecuniary motive was subdued. In Primus, the attorney mailed a letter disclosing to a sterilized mother that free legal assistance was available from the ACLU concerning her coerced sterilization. Because there was no profit motive behind the letter there was little danger of conflicts of interest that might tempt an attorney to "subvert the paramount interests of his client to enrich himself." NAACP v. Button, 371 U.S. 415, 443, 83 S.Ct. 328, 343, 9 L.Ed.2d 405 (1963). Also present was the critical first amendment element of freedom of association. Supreme Court cases that precede Primus in allowing solicitation of legal business all have the central elements of lack of pecuniary motive and a collective activity aimed at providing increased access to the courts.[4] The solicitation allowed in Primus thus can be seen as a culmination of cases which typically involve a group seeking promotion of legal rights without direct monetary aspirations.
Schreiber's conduct is of course not covered under protections offered in Primus both because his letter was entirely motivated by his pecuniary self-interest and because no political or associational rights are implicated whatsoever. Moreover, Primus notes that the speaker's motive is critical in distinguishing between altruistic, associational speech and pecuniary, non-associational speech, a distinction which may not be easily drawn, but ought to be undertaken. Id. 436 U.S. at 438, n. 32, 98 S.Ct. at 1908. In Schreiber's case, the motive and line are rather apparent, and his conduct squarely rests on the less favored side, requiring only an important state interest to justify its prohibition.
Nor does Schreiber's letter warrant protection on grounds of its informational value and social utility. The information contained in the letter could be made readily available through various media sources for any citizen who desired it. This is not a case in which access to information has been denied. See Virginia Pharmacy Board. Thus the social benefit from this method of commercial promotion is extremely marginal particularly when cast against possible harms to the recipient. See Harris v. Beneficial Finance Co., 338 So.2d 196 (Fla. 1976), cert. denied, 430 U.S. 950, 97 S.Ct. 1591, 51 L.Ed.2d 800 (1977) (commercial speech with little public interest not constitutionally protected).

II.
Schreiber would have us characterize his letter as a permissible advertisement protected under the dictates of Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). But we do not read Bates so broadly, and note that in that case the Supreme Court specifically narrowed its holding to the type of advertisement before it, leaving related issues for another day.[5] *598 When Bates is read in the light of Ohralik v. Ohio State Bar Association, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), it becomes apparent that in spite of Bates not every mode of communication is available to an attorney to sell his wares. Ohralik held that in-person attorney solicitation for pecuniary gain of a vulnerable client could be prohibited by the state. Certain modes are inherently problematic, and in-person solicitation offers potential for harm such as undue influence that warrants state prohibition. We feel that some degree of these harms exists in direct mail solicitation, and find the reasoning of Ohralik more applicable to our problem than that of Primus.
Alternatively, respondent relies on Central Hudson for the proposition that essentially the state can only regulate commercial speech through the least restrictive means, and offers that the Bar could institute filing requirements for all mail solicitations. Initially, we do not find the analogy of this case with Central Hudson convincing. Central Hudson dealt with the state's total ban on promotional advertising by utilities. The declared purpose of the prohibition was to regulate consumer usage of energy through control of such advertising. Such a boldly manipulative effort through state imposed silence is a thrust at the heart of first amendment values. The Orwellian spectre is difficult to miss, a spectre we do not sense when the Bar seeks to prohibit attorneys from soliciting clients through the mail. Second, even applying Central Hudson's standards, in all likelihood, a filing requirement would be both impractical if computer direct mailings were utilized and unenforceable due to the selectivity of direct mail campaigns. We read Central Hudson as requiring only the least restrictive reasonable means, not the least restrictive means imaginable.

III.
The discussion above serves to illustrate that there is no controlling law concerning the present problem. We turn therefore to our view.
The problems with direct mail solicitation are more akin to those of door-to-door canvassing than to those of newspaper advertising. The threat of door-to-door soliciting is the establishment of a relationship by the solicitor which overpowers the will of the recipient. In both mail and personal solicitation there is a possibility that the activity invades the privacy of citizens, see Breard v. Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951), and thrusts the advertiser's message upon a captive audience. See Bigelow, 421 U.S. at 828, 95 S.Ct. at 2235. We do not perceive that a citizen receiving a letter written on stationary carrying an attorney's letterhead would be bold enough to discard it after only a casual perusal. Read it he must, for letters from attorneys carry a special aura of respect because of the state's power that attorneys can invoke, and the attorney's words carry a corresponding sense of authority. We recognize that in Primus a letter sent following up an earlier meeting was not considered an appreciable invasion of privacy, but we feel that in circumstances in which the recipient is completely a stranger to the soliciting attorney and particularly if the recipient were emotionally, mentally or economically vulnerable, that a soliciting letter could be highly intrusive. The people of this state have evinced a deeply protectionistic attitude towards their privacy as Florida is one of a handful of states adopting an independent privacy amendment.[6] This consideration must be given weight in our balancing of Schreiber's right to commercial promotion through the mail against the state's interest in prohibiting his activity.
*599 Nor do we see direct mail solicitation as a necessary means of conveying commercial information to citizens. Alternative means of public advertisement are readily available to attorneys, and any social utility served by a purely commercial message motivated by pecuniary interests is adequately provided by the panoply of media available to attorneys.[7]
Although the problems of overreaching and undue influence through direct mail solicitation are obviously less critical than those involved with in-person solicitation, such dangers are clearly enhanced in comparison with public advertising. Because a letter can be specifically targeted, appealing to a certain person's known or calculated weaknesses, danger of overreaching cannot be totally dismissed.[8]
We discern an essential difference between attorneys and entrepreneurs. "[T]he primary function of the lawyer is that of officer of the court for the administration of justice... ." State ex rel. Florida Bar v. Murrell, 74 So.2d 221, 226 (Fla. 1954). As such, the Supreme Court has recognized a strong state interest in regulating the legal profession:
"The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been `officers of the Court.'" Goldfarb v. Virginia State Bar, 421 U.S. 773, 792, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572 (1975). While lawyers act in part as "self-employed businessmen," they also act "as trusted agents of their clients, and as assistants to the court in search of a just solution to disputes." Cohen v. Hurley, 366 U.S. 117, 124, 81 S.Ct. 954, 958, 6 L.Ed.2d 156 (1961).
Ohralik, 436 U.S. at 460, 98 S.Ct. at 1920. Bates did not question the states' interest in promotion of professionalism connected with the service and protection of clients. See Ohralik, 436 U.S. at 461, 98 S.Ct. at 1921. Because of the harm to the public's best interest that we perceive when an attorney solicits a client, that harm being the blinding of an attorney's legal judgment by pecuniary light,[9] we feel that prohibition of direct mail solicitation is directly related to the state's obligation to uphold professional standards for the protection of its citizens.
The final step in our assessment is to survey the courts of other states. We find that the cases supporting a prohibition of direct mail solicitation are equally divided with those which allow this solicitation. Compare Allison v. Louisiana State Bar Association, 362 So.2d 489 (La. 1978),[10]and Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 482 Pa. 416, 393 A.2d 1175 (1978), cert. denied, 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979), with Kentucky Bar Association v. Stuart, 568 S.W.2d 933 (Ky. 1978), and Koffler v. Joint Bar Association, 51 N.Y.2d 140, 412 N.E.2d 927, 432 N.Y.S.2d 872 (1980), cert. denied, 450 U.S. 1026, 101 S.Ct. 1733, 68 L.Ed.2d 221 (1981).
Because the arguments in these decisions from other jurisdictions are in equipoise they assist little in the resolution of our problem.
In summary we find that because respondent's letter implicates neither political expression nor associational rights, because the social benefits derived from this type of communication are negligible, and *600 because we perceive certain harms to citizens such as undue influence, invasion of privacy, and distortion of an attorney's legal judgment, the state has a paramount interest in the prohibition of direct mail solicitation motivated solely by pecuniary interests. The state under these circumstances has a crucial interest in restraining an attorney's motive for personal gain and stressing the desirable societal goal of public service.
Accordingly, Schreiber's letter does not fall within the ambit of protected commercial speech, and the judicial referee improperly dismissed the Bar's complaint. The referee's order granting dismissal is therefore reversed, and this cause remanded to the referee for further proceedings consistent with our opinion.
It is so ordered.
ADKINS, BOYD, ALDERMAN and McDONALD, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion.
OVERTON, Justice, concurring in part, dissenting in part.
I agree that direct mail solicitation by attorneys presents a type of attorney advertising that is not absolutely protected by the dictates of Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). Although I personally believe the majority's decision serves the best interests of the public and the legal profession, my reading of the cases cited by the majority leads me to the legal conclusion that we can regulate this type of advertising, but we cannot constitutionally prohibit it under the existing case law. The issue may be answered by the United States Supreme Court during this term in its review of a recent decision of the Missouri Supreme Court in In re R.M.J., 609 S.W.2d 411 (Mo. 1980), prob. juris. noted, ___ U.S. ___, 101 U.S. 3028, 69 L.Ed.2d 404 (1981).
NOTES
[1] Schreiber's letter reads:

Gentlemen:
It is noticed that possibly your company, dealing in International Trade would at times find yourselves confronted with Immigration problems. Should such a problem occur and should you wish the services of reputable Immigration attorneys specializing in Immigration and Naturalization Law, please feel free to contact the undersigned. It would be our pleasure to be of service to you.
Additionally should you wish a copy of our outline on Immigration policy we will be pleased to send you a copy.
[2] DR 2-103(A) reads:

A lawyer shall not recommend employment as a private practitioner, of himself, his partner, or associate to a nonlawyer who has not sought his advice regarding employment of a lawyer.
DR 1-102(A)(6) reads:
A lawyer shall not:
....
Engage in any other conduct that adversely reflects on his fitness to practice law.
[3] In addition to applicable disciplinary rules, Ethical Consideration 2-3 of the Code provides that "a lawyer should not contact a nonclient, directly or indirectly, for the purpose of being retained to represent him for compensation." Integration Rule 11.02(5), moreover, has consistently stated: "The solicitation of professional employment by advertisement, runners, solicitors, investigators, or in any other manner except as authorized by controlling court decision, the Integration Rule, or the Code of Professional Responsibility shall constitute grounds for disciplinary action." The exception was directed at advertising, which became permissible after the United States Supreme Court's decision in Bates v. State Bar of Ariz., 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), and includes solicitation permissible under In re Primus, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978). See The Fla. Bar re Amendment to the Code of Professional Responsibility (Advertising), 380 So.2d 435 (Fla. 1980) (conforming the Code to Bates).

In light of these pervasive warnings against all manner of solicitation we reject Schreiber's claim he lacked notice that his actions were prohibited.
[4] See, e.g., United Transp. Union v. State Bar of Mich., 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971); Brotherhood of Railroad Trainsmen v. Virginia ex rel. Va. State Bar, 377 U.S. 1, 8 S.Ct. 1113, 12 L.Ed.2d 89 (1964); NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).
[5] We have recognized the inherent differences between advertisement and solicitation. See The Fla. Bar re Amendment to the Code of Professional Responsibility (Advertising), 380 So.2d 435, 437 (Fla. 1980).
[6] Article I, section 23, Florida Constitution (1980), reads:

Right of privacy.  Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.
As officers of the court, attorneys carry some hue of governmental color.
[7] Florida is in the majority of states which allows electronic media advertising. See Bnosnahan & Andrews, Regulation of Lawyer Advertising: In the Public Interest?, 46 Brooklyn L.Rev. 423, 429 (1980).
[8] "Solicitation, as distinguished from advertising, is fraught with adverse consequences in whatever form it takes no matter how pure the lawyer thinks his or her motives are." Christensen, Advertising by Lawyers, 1978 Utah L.Rev. 619, 634.
[9] "[I]f money making is the lawyer's sole purpose, he worships a god that is too small." Petition of Florida Bar Ass'n, 40 So.2d 902, 909 (Fla. 1949).
[10] We do not deal with as difficult an issue as the court faced in Allison v. Louisiana State Bar Ass'n, 362 So.2d 489 (La. 1978), which upheld prohibition of mail solicitation by a prepaid legal program, a service arguably "socially desirable." Id. at 497 (Tate, J., concurring). We express no view concerning this situation.